M & R INVESTMENT COMPANY, INC., CHARLES COOPER, J. DILLY, ALVIN ENGLETT, Appellants and Cross-Respondents, v. DANIEL MARK MANDARINO, Respondent and Cross-Appellant.

No. 15652

December 31, 1987 748 P.2d 488

*Thorndal, Backus & Maupin,* Las Vegas, for Appellant and Cross-Respondent M & R Investment Company, Inc.

*Johnson & Rosenberger,* Las Vegas, for Appellants and Cross-Respondents Charles Cooper, J. Dilly, Alvin Englett.

*E. Leslie Combs, Jr.,* Las Vegas, for Respondent and Cross-Appellant.

## OPINION

*Per Curiam:*

At 9:00 p.m., on September 15, 1982, respondent and cross-appellant Daniel Mark Mandarino, an admitted "card counter,"[1] entered the Oasis Casino of the Dunes Hotel and began playing blackjack. Mandarino wore dark glasses and a false mustache, and he had slicked back his hair in an effort to conceal his true identity. Because Mandarino was employed by another casino, he was aware of the fact that casinos ban card counters from their property and distribute the photographs of known card counters to other gaming establishments.

A number of casino employees became suspicous of Mandarino after they observed his irregular betting, his nervous demeanor and his obvious disguise. They suspected that he was either counting cards or cheating. When Mandarino saw that he was being watched, he left the table to cash in his winnings and to avoid the risk of being identified and banned from the casino.

---

[1] A "card counter" or "card caser" keeps track of exposed cards, increases the size of his bets when the odds are in his favor, and decreases the size of his bets or discontinues betting when they are not. J. Scarne, *Scarne's Complete Guide to Gambling,* pgs. 332-333 (1961).

When casino security guards approached him and asked for identification at the cashier's cage, Mandarino gave a false name, falsely stated that his wife had his identification and indicated that she was at a slot machine near the front door. As the guards and Mandarino approached the door, Mandarino bolted and ran. A guard chased Mandarino across Las Vegas Boulevard and into the entryway of the MGM Grand Hotel, where the guard tackled Mandarino, handcuffed him and returned him to a security office at the Dunes.

Mandarino subsequently filed suit against appellant and cross-respondent M & R Investment Company, Inc. (M & R), which owns the Dunes Hotel. The suit also named Dunes Hotel security guards Charles Cooper, J. Dilly, and Alvin Englett as defendants. In his complaint, Mandarino alleged that, when employees of M & R discovered that he was a card counter, they called him a "thief" and a "trespasser," pursued him through the casino and into the street, tackled him in the entryway to another casino, transported him to the Dunes Hotel security office, confiscated $2,650 in chips that he had won playing blackjack, photographed him, beat him up, had him arrested, and had his photograph distributed to other casinos. The complaint asserted twelve claims for relief, including claims for conversion, invasion of privacy, defamation, malicious prosecution, assault, battery, false arrest, false imprisonment, intentional infliction of emotional distress, and outrage.

Prior to trial, the district court granted Mandarino's motion for partial summary judgment on his conversion claim and ordered M & R to pay Mandarino $2,650. M & R did so. Following the presentation of his case-in-chief, the district court dismissed Mandarino's claims for conversion and invasion of privacy pursuant to NRCP 41(b). The defamation claim against Cooper, Dilly, and Englett was also dismissed. Subsequently, the district court granted appellant's motion for a directed verdict pursuant to NRCP 50(a) and dismissed Mandarino's claim for malicious prosecution. The remaining claims for assault and battery, outrage and intentional infliction of emotional distress, false imprisonment and false arrest, and defamation (against M & R) were submitted to the jury.

The jury returned a verdict against M & R on Mandarino's claim for defamation. The jury, however, found in favor of the defendants on the remaining claims. Thereafter, M & R, as well as Mandarino, filed timely motions for judgment notwithstanding the verdict or, in the alternative, for a new trial.[2]

---

[2]On appeal M & R asserts that Mandarino's post-judgment motions were untimely. We reject this contention. Our review of the record reveals that Mandarino's motions were filed within ten days of service of written notice of entry of the judgment. *See* NRCP 50(b); NRCP 59(b).

The district court denied M & R's motion for judgment notwithstanding the verdict (JNOV) respecting the claim for defamation, but granted M & R's alternative motion for new trial on the defamation issue. Similarly, the district court denied Mandarino's motion for JNOV, but granted his motion for a new trial on the claims alleging assault and battery, false arrest and false imprisonment, and intentional infliction of emotional distress and outrage. This appeal followed.

On appeal, M & R asserts that the district court erred in denying its motion for JNOV. All the appellants assert that the district court erred in granting Mandarino's motion for new trial. Mandarino cross-appeals and maintains that the district court erred in dismissing his claims for conversion and invasion of privacy pursuant to NRCP 41(b). Further, Mandarino challenges the district court's order directing a verdict in favor of appellants on his claim for malicious prosecution.

## DEFAMATION

M & R contends that, because the record is devoid of evidence that M & R published a defamatory statement about Mandarino, the district court erred in denying its motion for JNOV on Mandarino's defamation claim for relief. We agree. A defamatory statement is actionable only if it has been published. Jones v. Golden Spike Corp., 97 Nev. 24, 623 P.2d 970 (1981); Prosser And Keeton On Torts § 113 (5th Ed. 1984). "Publication . . . is the communication of the defamatory matter to some third person. . . ." Jones, 97 Nev. at 26, 623 P.2d at 971 quoting Prins v. Holland-North American Mortgage Co., 181 P. 680 (Wash. 1919). The communication of a defamatory statement between agents or employees of a corporation, however, is not publication. Jones, 97 Nev. at 26, 623 P.2d at 971.

Publication is generally proven by direct evidence of the communication of the defamatory statement to a third person, that is, by the testimony of a third person that he heard the defamatory statement. Publication may also be proven, however, by circumstantial evidence of the communication of the defamatory statement to a third person, that is, by evidence that the defamatory statement was comprehensible to and uttered in the presence and hearing of a third person. Lombardi v. Flaming Fountain, Inc., 327 So. 2d 39 (Fla.App. 1976); Duckworth v. First National Bank, 176 S.E.2d 297 (S.C. 1970); Gaudette v. Carter, 214 A.2d 197 (R.I. 1965).

We must allow Mandarino "the benefit of every reasonable inference in support of the verdict," in reviewing the district court's denial of M & R's motion for JNOV. *Hernandez v. City of Salt Lake*, 100 Nev. 504, 686, P.2d 251 (1984). Nonetheless, the record before us is devoid of any evidence that M & R published a defamatory statement about Mandarino. The record indicates that, at 9:00 a.m. on September 15, 1982, on the floor of the Oasis Casino, Cooper asked Mandarino for identification, Mandarino bolted, and Roger Mennie, another Dunes Hotel employee said to Cooper, "[C]atch him, he's a thief and [he is] trespassing also." The communication of the allegedly defamatory statement between Mennie and Cooper, both employees of M & R, is not publication. *Jones, supra.* The record contains no direct or circumstantial evidence of the communication of the defamatory statement to a third person. Evidence that one employee of M & R said something defamatory about Mandarino to another employee of the corporation, without more, that is, without evidence regarding the tone in which the defamatory statement was made or the proximity of third parties, does not establish that the defamatory statement was published. *Id.* Because the record is devoid of any evidence of the requisite element of publication, Mandarino, as a matter of law, failed to establish a sufficient claim for relief. *Jones, supra.* The district court, therefore, erred in denying M & R's motion for JNOV, and in granting M & R's motion for a new trial on Mandarino's defamation claim for relief. Accordingly, on remand, the district court shall vacate its order granting a new trial and enter judgment notwithstanding the verdict in favor of M & R on the defamation claim.

### ASSAULT AND BATTERY, FALSE ARREST AND FALSE IMPRISONMENT, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND OUTRAGE

Appellants argue that the district court erred in granting Mandarino's motion for a new trial on the claims for assault and battery, false arrest and false imprisonment, and intentional infliction of emotional distress and outrage. We agree. The district court may grant a new trial if it finds that the jury has shown manifest disregard for the instructions of the court. NRCP 59(a)(5). "In determining the propriety of the granting of a new trial under NRCP 59(a)(5), the question is whether we are able to declare that, had the jurors properly applied the instructions of the court, it would have been impossible for them to reach the verdict which they reached." *Weaver Brothers, Ltd. v. Misskel-*

ley, 98 Nev. 232, 234, 645 P.2d 438, 439 (1982); *see also* Jaramillo v. Blackstone, 101 Nev. 316, 704 P.2d 1084 (1985).

Our review of the record reveals that appellants presented substantial evidence under which the jury, in properly applying the instructions of the court, could have reasonably found in appellants' favor. For example, in light of the testimony presented, the jury could have properly found that appellants had reasonable cause to believe that Mandarino had committed a crime, and that appellants used reasonable force to detain him until the police arrived. Accordingly, we conclude that the district court erred in granting Mandarino's motion for a new trial respecting these claims, and we direct the district court to reinstate the jury's verdict in favor of appellants.

## CONVERSION

On August 11, 1983, following a hearing, the district court entered a written order granting Mandarino's motion for partial summary judgment respecting the claim for conversion. The order specifically awarded partial judgment in the amount of $2,650.00 to Mandarino. Our review of the record on appeal, however, reveals no written motion for partial summary judgment, no written opposition to the motion and no transcript of the hearing at which the district court heard argument respecting the motion for partial summary judgment.

On August 16, 1983, Mandarino filed an amended complaint in the district court which again asserted a claim for conversion and which sought "[s]pecial damages for conversion of [Mandarino's] property in the amount of $2,650." The amended complaint also sought a general award of punitive damages. On February 17, 1984, following the presentation of Mandarino's case-in-chief, M & R moved the district court pursuant to NRCP 41(b) to dismiss the claim for conversion.[3] M & R argued that under Nevada law "any money won at a gaming table is not recoverable in a civil action." *See e.g.,* Weisbrod v. Fremont Hotel, 74 Nev. 227, 326 P.2d 1104 (1958) (an action will not lie for collection of money won in gambling, even when patron seeks such recovery from proprietors of gaming establishment). The district court granted M & R's motion, but, apparently, it based its decision on the fact that the court had previously granted

---

[3]NRCP 41(b) provides, in pertinent part:

After the plaintiff has completed the presentation of his evidence, the defendant . . . may move for a dismissal on the ground that upon the facts and the law the plaintiff has failed to prove a sufficient case for the . . . jury.

Mandarino's motion for partial summary judgment on the conversion claim and, therefore, the district court determined that the claim previously had "been disposed of in its entirety." We discern these facts from the transcript of the hearing before the district court of February 17, 1987. We note, however, that no written order memorializing the district court's decision pursuant to NRCP 41(b) appears in the record on appeal.

In his cross-appeal, Mandarino contends that the district court erred by dismissing his conversion claim because the trier of fact was entitled to decide whether punitive damages should be awarded on the conversion claim. Our review of the propriety of the district court's order dismissing the conversion claim pursuant to NRCP 41(b), however, is necessarily dependent upon the evidence which would have been disclosed in the written motion for partial summary judgment or in a transcript of the hearing on that motion. *See* Stover v. Las Vegas Int'l Country Club, 95 Nev. 66, 589 P.2d 671 (1979). This court "has not been favored with a transcript" of that hearing, nor has cross-appellant submitted a settled and approved statement pertaining to the motion for partial summary judgment or the proceedings conducted pursuant to that motion. *See* Cleveland v. Hopper, 90 Nev. 134, 136, 520 P.2d 614, 615 (1974); NRAP 10(b), (c) and (e). Thus, without cross-appellant's written pleadings setting forth the precise relief requested by the motion for partial summary judgment, we are unable to ascertain whether the district court correctly determined that the prior order granting the partial summary judgment resolved and disposed of the conversion claim *in its entirety.* It is Mandarino's responsibility as the cross-appellant to make and transmit an adequate appellate record to this court. When evidence upon which the lower court's judgment rests is not included in the record, it is assumed that the record supports the district court's decision. *See* Schouweiler v. Yancey Co. 101 Nev. 827, 712 P.2d 786 (1985); Carson Ready Mix v. First Nat'l Bk., 97 Nev. 474, 476, 635 P.2d 276, 277 (1981). The record before us discloses no error in this regard which has been properly preserved for appellate review, and Mandarino has failed to make a *prima facie* showing that the trial court's dismissal of the conversion claim pursuant to NRCP 41(b) was clearly erroneous. *See* Jaramillo v. Blackstone, 101 Nev. 316, 704 P.2d 1084 (1985). Accordingly, we reject Mandarino's contention in this regard.

## INVASION OF PRIVACY

Mandarino contends that the district court erred in granting M & R's motion for involuntary dismissal of his invasion of

privacy claim for relief pursuant to NRCP 41(b). We disagree. Interpreting the evidence presented at trial in the light most favorable to plaintiff, we conclude that cross-appellant did not establish a *prima facie* case of invasion of privacy sufficient to withstand the motion for dismissal pursuant to NRCP 41(b). Garton v. City of Reno, 102 Nev. 313, 720 P.2d at 1227 (1986).

Specifically, Mandarino contends that the actions of appellants constituted an unwarranted intrusion into his seclusion, solitude and private affairs, as well as an unjustified public disclosure of private facts. *See generally* Montesano v. Donrey Media Group, 99 Nev. 644, 668 P.2d 1081 (1983). M & R correctly contends, however, that the alleged publication of facts about Mandarino did not constitute a publication of private facts, but rather, a publication of public facts which Mandarino himself made public. In the instant case, Mandarino himself published the fact that he is a card counter by the very act of publicly counting cards at a blackjack table in a public gaming establishment. Therefore, the fact that Mandarino counted cards for the purpose of monetary gain was not a private fact about which he could have had a reasonable expectation of privacy. Moreover, the fact that he disguised himself in an attempt to prevent the exposure of his true identity, clearly establishes that he expected that his skills would be observed and his identity detected and published. Accordingly, we conclude that Mandarino failed to establish a *prima facie* case of invasion of privacy based on the public disclosure of private facts.

Additionally, we observe that a twenty-two year old man, disguised in dark glasses, a false mustache and slicked down hair, who, by virtue of his skill at counting cards, wins a great deal of money in a short period of time, does not have a reasonable expectation that casino personnel will turn a blind eye to his presence and will not request that he identify himself. We conclude, therefore, that even interpreting the facts in the light most favorable to Mandarino, he could have had no reasonable expectation under these circumstances that casino personnel would not request him to identify himself, publish his photograph, or even detain him for questioning after he fled the premises.

## MALICIOUS PROSECUTION

Mandarino next contends that the district court erred in granting a directed verdict against him on his claim for malicious prosecution pursuant to NRCP 50(a).[4] We disagree.

---

[4]NRCP 50(a) provides, in pertinent part:

A motion for a directed verdict may be made at the close of the . . . case. . . . If the evidence is sufficient to sustain a verdict for the opponent, the motion shall not be granted.

To recover for malicious prosecution, Mandarino had to demonstrate that police officers "commenced the criminal prosecution because of direction, request, or pressure" from appellants. Catrone v. 105 Casino Corporation, 82 Nev. 166, 171-172, 414 P.2d 106, 109 (1966). Viewing the evidence and all inferences in the light most favorable to Mandarino, we conclude that the record is devoid of any evidence that the police officers commenced the criminal prosecution at the direction, request, or pressure of appellants. Connell v. Carl's Air Conditioning, 97 Nev. 436, 438, 634 P.2d 673 (1981); *Catrone, supra.* Consequently, the evidence presented below was not sufficient to sustain a verdict in Mandarino's favor on this issue. The district court, therefore, correctly granted a directed verdict against Mandarino on the claim for malicious prosecution.

## CONCLUSION

Accordingly, we reverse the orders of the district court (1) denying appellant M & R's motion for a judgment notwithstanding the jury's verdict on the claim for defamation, and (2) granting the parties' motions for new trial. On remand, the district court shall enter judgment in favor of M & R on its motion for judgment notwithstanding the verdict on the claim for defamation, and shall reinstate the jury's verdict respecting the remaining claims. The judgment of the district court is affirmed in all other respects.