RUTH M. SIMPSON, Appellant, v. MARS INC.; ETHEL M. CHOCOLATES INC.; and KELLY TEMPORARY SERVICES INC., Respondents.

No. 26068

January 5, 1997

929 P.2d 966

*Robert G. Giunta & Frederick Santacroce,* Las Vegas, for Appellant.

*Moran & Weinstock* and *Glenn Schepps,* Las Vegas, for Respondents Mars Inc. and Ethel M. Chocolates Inc.

*Lionel, Sawyer & Collins,* Las Vegas, for Respondent Kelly Temporary Services Inc.

## OPINION

By the Court, SHEARING, J.:

This is an appeal from an order of the district court dismissing a complaint pursuant to NRCP 12(b)(5) for failure to state a claim upon which relief can be granted.

Appellant Ruth Simpson (Simpson) was employed by respondent Kelly Temporary Services, Inc. (Kelly Services) from January 14, 1994, until February 25, 1994. Simpson was assigned by Kelly Services to work at the Ethel M. Chocolates Inc. candy factory (Ethel M.). Ethel M. is a subsidiary of Mars Inc. (Mars), a corporation incorporated in Delaware and doing business in Nevada. Shortly after her assignment, Simpson was contacted by

De-Andrea Arcenaux (Arcenaux), Senior Supervisor of Kelly Services, and informed that her assignment at Ethel M. had been terminated. The next day, Simpson met with Arcenaux and was told that she was being terminated as a Kelly Services employee because she had sexually harassed a female co-worker at Ethel M. Arcenaux told Simpson that a co-worker at Ethel M. had alleged that she had been chased around the parking lot by Simpson.

On May 13, 1994, Simpson filed a complaint against Kelly Services, Ethel M. and Mars, raising the following causes of action: (1) wrongful discharge in violation of public policy; (2) breach of implied covenant of good faith and fair dealing; (3) intentional infliction of emotional distress; (4) defamation; (5) negligence; and (6) respondeat superior. Mars, Ethel M. and Kelly Services filed motions to dismiss pursuant to NRCP 12(b)(5).[1] A hearing was held in the district court, and the district court subsequently entered an order dismissing all causes of action for failure to state a claim upon which relief could be granted. Simpson appeals, arguing that the district court erred as a matter of law by granting the motion to dismiss.

We conclude that the district court properly dismissed all the causes of action except the cause of action for defamation.

The standard of review for a dismissal under NRCP 12(b)(5) is rigorous as this court must construe the pleading liberally and draw every fair inference in favor of the non-moving party. *Vacation Village v. Hitachi America*, 110 Nev. 481, 484, 874 P.2d 744, 746 (1994). All factual allegations of the complaint must be accepted as true. *Id.* A complaint will not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff could prove no set of facts which, if accepted by the trier of fact, would entitle him or her to relief. *Id.*

Simpson's cause of action for defamation alleges that the defendants published to Simpson's co-workers that she sexually harassed co-workers and was dismissed for sexual harassment. In order to establish a prima facie case of defamation, a plaintiff must prove: (1) a false and defamatory statement by defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages. *Chowdhry v. NLVH, Inc.*, 109 Nev. 478, 483, 851 P.2d 459, 462 (1993).

---

[1]NRCP 12(b)(5) provides that a claim may be dismissed for "failure to state a claim upon which relief can be granted."

The defendants claim that Simpson has not alleged the essential element of publication because the alleged defamatory statements were made to agents and employees of the defendant corporations who are not third persons for defamation purposes. In Jones v. Golden Spike Corp., 97 Nev. 24, 623 P.2d 970 (1981), this court adopted the rule that agents and employees of a corporate defendant in a libel action are not third persons for the purposes of publication of a libel. This court quoted Prins v. Holland-North American Mortgage Co., 181 P. 680 (Wash. 1919) with approval as follows:

> Publication of a libel is the communication of the defamatory matter to some third person or persons. Here the communication was sent from the main office of the company to its branch office. . . . Agents and employes [sic] of this character are not third persons in their relations to the corporation, within the meaning of the laws pertaining to publication of libels. For the time being, they are a part and parcel of the corporation itself, so much so, indeed, that their acts within the limits of their employment are the acts of the corporation. For a corporation, therefore, acting through one of its agents or representatives, to send a libelous communication to another of its agents or representatives, cannot be a publication of the libel on the part of the corporation. It is but communicating with itself.

97 Nev. at 26, 623 P.2d at 971, *quoting* Prins v. Holland-North American Mortgage Co., 181 P. at 680-81.

In adopting this rule this court rejected the position of the Restatement (Second) of Torts § 577(1) that publication of defamatory material to anyone other than the person defamed, even to agents, is publication for the purpose of making a prima facie case of defamation. *See* Restatement § 577(1) cmt. e.; *see also* W. Page Keeton, et al., *Prosser and Keeton on Torts,* § 113 at 797-802 (5th ed. 1984). The Restatement recognizes that there are privileges for certain intracorporate communications, but such privileges are defenses, not part of the prima facie case. *See* Restatement (Second) of Torts §§ 593-96 (1977).

The instant case exemplifies why the Restatement provides a better rule when dealing with corporations. The circumstances of the communication of the allegedly defamatory material are uniquely within the knowledge of the corporation and its agents. It is unfair to put the burden on the plaintiff to determine and allege the circumstances of communication within the corporation before she can make a prima facie case. Therefore, the circumstances of communication are more appropriately an ele-

ment of the defense to an action of defamation rather than an element of the plaintiff's prima facie case. *See also* W. Page Keeton, et al., *Prosser and Keeton on Torts,* (5th ed. 1984, § 113, 797-802.

Another practical problem with the approach this court took in *Jones* is that the law of defamation is meant to provide an incentive for people not to spread lies that can injure others. Since most people spend a good part of their time, effort and lives at their work, and have many colleagues, friends and acquaintances there, to allow an employer to circulate lies around the workplace with impunity is particularly damaging.

Even cases like Prins v. Holland-North American Mortgage Co., and Mims v. Metropolitan Life Ins. Co., 200 F.2d 800 (5th Cir. 1952), on which this court relied in *Jones,* recognize the limitation that the communication of the alleged defamatory material is only privileged if covered in the regular course of the corporation's business. It is unfair to require the plaintiff to plead and prove facts which are peculiarly within the knowledge of the corporate defendant, such as the circumstances of intracorporate communications.

This court adopts the position of the Restatement (Second) of Torts § 577(1), and overrules the position taken by this court on the issue of publication of defamatory communications within corporations in Jones v. Golden Spike Corp., 97 Nev. 24, 27, 623 P.2d 970, 971 (1981). Corporations may have the defense of privilege to allegations of defamation, but the burden of alleging and proving the privilege are on the defendant corporation, not the plaintiff.

For the reasons set forth above, we reverse that part of the district court's order dismissing Simpson's cause of action for defamation. The order is affirmed in all other respects.

Rose, J., and Adams, D. J., concur.[2]

Springer, J., with whom Steffen, C. J., agrees, dissenting:

The majority would permit Ms. Simpson to proceed on the defamation portion of her "fourth cause of action," which is entitled "Invasion of Privacy/Defamation." The "fourth cause of action" (claim for relief) attempts to plead torts of invasion of privacy, defamation, slander and false light. It does not properly state a claim for any of these torts.

With respect to the defamation or slander claim upheld by the majority, the pleader fails to charge that the "publication" in

---

[2]The Honorable Brent T. Adams, District Judge, was appointed to sit in place of The Honorable Cliff Young, Justice, who voluntarily recused himself from participation in this case.

questions was either malicious or false; and in making "damage allegations," the pleader leaves out slander and restricts the plaintiff's damage claims only to "those acts which constitute invasion of privacy."

The language of the "fourth cause of action" in question is to me completely unintelligible; and I do not see how the trial court could possibly have let it stand. Although the pleader of this "cause of action" claims damages only for the tort of invasion of privacy, the pleading fails to mention this tort or any of its elements. Since the majority is only interested in salvaging the "slander" tort claims, I will limit my discussion to this claim and will ignore invasion of privacy and false light charges.

The gist of the defamation or slander claim is that "the Defendants" (necessarily the individual, unnamed, "Doe," defendants) "published to co-workers that the Plaintiff sexually harassed them and was dismissed for sexual harassment." Incomprehensively, the complaint fails to charge that the publication was either malicious or false. It does, however, say that the defendants "knew of the falsity" and makes the conclusory allegation that by "publishing the statements . . . to co-workers" the individual defendants "slandered and placed the Plaintiff in false light before her co-workers."

It is very difficult to determine whether the pleader is trying to state a claim for invasion of privacy, defamation or false light; but the pleader's intention becomes clearer when we reach the last paragraph in this "cause of action," paragraph 48, in which the pleader incorporates previously averred "damage allegations" and specifies that these allegations "for the purpose of this [fourth] count shall refer to acts which constitute invasion of privacy." From this paragraph we are able to learn that the damage allegations refer to the invasion of privacy claim alone and not to the defamation or false light claims that are referred to or touched upon throughout the "fourth cause of action."

In sum, then, the pleader has attempted to charge defamation in a complaint in which there are no allegation of malice, no allegation of falsity and no allegation of damages with respect to the slander. It might, of course, be argued that the allegation that the defendants "knew" of the falsity fills in for the failure to allege that the statements themselves were false; but I do not think that the trial judge could be faulted in this case for dismissing slander charges because of this missing element, even if the other elements had been properly pleaded.

Malice and damages are necessary elements of the tort. Chowdhry v. NLVH, Inc., 109 Nev. 478, 483, 851 P.2d 459, 462 (1993). There is no mention of malice in the pleading, and the claim for damages is restricted to the invasion of privacy claim.

The "invasion of privacy/defamation" "cause of action" was properly dismissed for failure to state a claim upon which relief can be granted.

In addition to its failure to plead the essential elements of malice, falsity and damages, Ms. Simpson has failed to plead the only other necessary element of "defamation," *publication*. Ms. Simpson has alleged that some unnamed workers "published to co-workers that the Plaintiff sexually harassed them and was dismissed for sexual harassment" and that the publication was "done within the course and scope of their employment," in other words, statements made among co-workers in pursuance of and as a part of their job.

The first thing that we must examine in determining whether Ms. Simpson failed to plead properly the element of publication (in addition to her failing to plead the other elements of the tort) is to separate the individual from the corporate defendants.

With regard to the corporate defendants, who are sued under *respondeat superior,* we must keep in mind that the tort in question is an *intentional* tort and that the corporations cannot be held liable unless there was some form of "corporate malice" (that is to say, some form of malice on the part of corporate management) or false and malicious statements issued by managerial personnel or the corporation. Cerminara v. California Hotel and Casino, 104 Nev. 372, 378, 760 P.2d 108, 111 (1975). There is no point in discussing this point at any length because it is clear that the statements alleged to have been made here are attributed to mere employees who were communicating with "co-workers" in the course of their employment. I see absolutely no basis for corporate liability for statements, true or false, that are made among "co-workers" about a fellow employee, whether these statements were job-connected or not. Generally speaking a corporation is not liable for the intentional torts of its line employees, absent special circumstances that are clearly not present here.

With regard to the question of whether Ms. Simpson has pleaded an actionable "publication" by and to "co-workers," it is necessary to define what a publication is. Under *Jones* and *Chowdhry,* cited in the majority opinion, intracorporate communications made among agents and employees of a corporation acting "within the limits of their employment" are not "publications" for the purposes of slander claims. Under *Chowdhry,* a slander claimant must allege an "unprivileged communication" as part of a *prima facie* case for defamation. Had Ms. Simpson wanted to plead a proper defamation case with regard to the publication element, she would have had to have pleaded, under *Jones* and *Chowdhry,* an unprivileged communication, that is to

say a communication that was not protected by the conditional privilege afforded to intracorporate communications. She chose not to do this and, rather, to plead that these communications were made as part of the employees' job.

To salvage Ms. Simpson's slander claim, the majority wants to upset Nevada precedent that has been in effect for the past fifteen years. This is unwise and unnecessary. All Ms. Simpson had to do to avert dismissal for failure to plead publication in this case was merely to allege that certain malicious, false and *unprivileged* communications (that is to say, communications that were not legitimately made as part of the "co-workers" employment were made about her. She is presumed to have known what Nevada law was on the subject, and I see no reason to change Nevada law to fit her purpose and to try to protect her from dismissal of an improperly pleaded element of her tort claim.

It seems to me that the majority is unnecessarily engaged in pin-head dancing in its discussion of publication as part of the prima facie case versus privilege as an affirmative defense; but even if I were to agree with the majority's drastic alteration of Nevada precedent, and even if the essential elements of malice, falsity, damages and publication had been properly pleaded, the effect of this opinion would clearly bear only upon Mr., Ms. and Mrs. Doe. Under the majority ruling, if Ms. Simpson had pleaded the stated elements properly, she could then proceed on the intentional tort of slander only against the individual fictitiously-named defendants.

Ms. Simpson did not properly plead any of the elements of slander; consequently, the proper ruling of the trial court should stand.