JUANITA H. POPE, Appellant, v. MOTEL 6, Respondent.

No. 37771

June 23, 2005

114 P.3d 277

*Juanita H. Pope,* Ely, in Proper Person.

*Erickson Thorpe & Swainston, Ltd.,* and *John A. Aberasturi,* Reno; *Hunton & Williams* and *Michael F. Marino* and *Shawn Patrick Regan,* New York, New York, for Respondent.

Before ROSE, GIBBONS and HARDESTY, JJ.

## OPINION

By the Court, HARDESTY, J.:

This is a proper person appeal from a district court order granting summary judgment in an employment discrimination and tort case that raises three issues of first impression: (1) whether an employee who brings discrimination claims in the district court without first presenting them to the administrative agency has failed to exhaust administrative remedies; (2) whether NRS 613.340(1), Nevada's anti-retaliation statute, supports a retaliation claim when a third party, and not the complaining party, has engaged in allegedly protected activity; and (3) whether statements made to police before criminal proceedings are commenced should be subject to an absolute privilege or only a qualified privilege.

We take this opportunity to clarify that a party cannot bring a state court claim for employment discrimination unless that claim was first presented to the administrative agency or is reasonably related to the administrative claims. Additionally, we conclude that NRS 613.340(1) does not support a retaliation claim when the in-

dividual claiming retaliation has not personally engaged in protected activity. Finally, we hold that a qualified privilege applies to statements made to police before criminal proceedings are initiated.

## FACTS

Respondent Motel 6 hired appellant Juanita Pope on April 5, 1996, as a housekeeper. Within several months, she was promoted to assistant head housekeeper and then to head housekeeper. In Juanita's first fourteen months of employment, she was written up, warned, and suspended twice for unsatisfactory job performance and tardiness. In June 1997, Motel 6 manager Victoria Inman verbally warned Juanita about spreading gossip to other employees. At that time, Inman informed Juanita that as head housekeeper she was an important part of management, and negative comments were inappropriate. Allegedly, Juanita continued to say negative things about Inman and Motel 6 in general, and Inman terminated Juanita's employment after consulting with Motel 6's regional human resources manager. In support of Juanita's termination, Inman produced written statements from three employees, which alleged that Juanita spoke poorly of Inman and Motel 6.

According to Juanita, following her termination, Inman falsely accused Juanita and her husband Robert, also a former employee, of stealing several items from Motel 6 and writing threatening letters to Inman. Juanita claims that Inman informed a Motel 6 area manager and local police of the alleged theft and letters.

Subsequently, Juanita filed a charge of discrimination with the Nevada Equal Rights Commission (NERC). Juanita's NERC charge asserted that she was terminated because Robert had previously complained about a sexual harassment incident at Motel 6 and because he had also filed a NERC charge after his termination that alleged retaliatory discharge.

Juanita, Robert, and a third former employee then filed a district court complaint, each alleging several causes of action. In particular, Juanita brought the following claims: (1) wrongful termination because of her race or national origin, (2) failure to promote because of race or national origin, (3) retaliatory termination, (4) defamation, and (5) intentional infliction of emotional distress.[1] After some pretrial discovery and a lengthy hearing, the district court granted summary judgment to Motel 6 on all causes of action. Juanita appealed.

---

[1]Juanita also alleged that the defendants acted with "perversity and depravity, and deliberately subjected her to cruel and unjust hardship in conscious disregard of her rights." This last claim for perversity and depravity is not an independent cause of action, and plaintiffs' counsel offered no authority to the district court to support such a cause of action.

## DISCUSSION

This court reviews a district court's decision to grant summary judgment de novo.[2] Summary judgment is appropriate when, after a review of the record viewed in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[3] In determining whether summary judgment is proper, the nonmoving party is entitled to have the evidence and all reasonable inferences accepted as true.[4]

### Racial discrimination

In its summary judgment motion, Motel 6 argued that Juanita did not exhaust her administrative remedies before bringing her racial discrimination claim in district court because her NERC complaint alleged only a claim for retaliatory discharge, not racial discrimination.

In light of the similarity between Title VII of the 1964 Civil Rights Act[5] and Nevada's anti-discrimination statutes, we have previously looked to the federal courts for guidance in discrimination cases.[6] Under NRS 613.330(1), it is an unlawful employment practice to discharge any individual because of his or her race, color, sex, religion, sexual orientation, age, disability or national origin. However, NRS 613.420 requires an employee alleging employment discrimination to exhaust her administrative remedies by filing a complaint with NERC before filing a district court action.[7] We have explained that the ''exhaustion of administrative remedies is necessary to prevent the courts from being inundated with frivolous claims.''[8]

---

[2]*Walker v. American Bankers Ins.*, 108 Nev. 533, 836 P.2d 59 (1992).

[3]*See Medallion Dev. v. Converse Consultants*, 113 Nev. 27, 31, 930 P.2d 115, 118 (1997).

[4]*Id.*

[5]*See* 42 U.S.C. §§ 2000e–2000e-16 (2000).

[6]*See Copeland v. Desert Inn Hotel*, 99 Nev. 823, 673 P.2d 490 (1983); *Apeceche v. White Pine Co.*, 96 Nev. 723, 615 P.2d 975 (1980).

[7]*Palmer v. State Gaming Control Board*, 106 Nev. 151, 153, 787 P.2d 803, 804 (1990) (holding that the Nevada Legislature intended plaintiffs to administratively exhaust employment discrimination claims ''prior to seeking redress in the district courts'').

[8]*Id.* The exhaustion requirement can be excused if NERC fails to act within a reasonable time and the complainant faces a statute of limitations deadline or an irretrievable loss of evidence. *Id.*

As the Ninth Circuit has recognized, if the employee alleging discrimination later files a district court action, she may only expand her discrimination action to include allegations of other discrimination if the new claims are " 'reasonably related to the allegations of the [administrative] charge.' "[9] Claims in a complaint are not like or reasonably related to allegations in an administrative charge unless a factual relationship exists between them.[10] Consequently, an employee who brings unrelated claims in the district court without first presenting them to NERC has failed to exhaust her administrative remedies.

Juanita's initial NERC charge was based on retaliatory discharge. She checked the box indicating retaliation, but she did not check the corresponding boxes indicating race, sex, or national origin discrimination. Further, her charge explained that she believed that she was terminated because Robert filed a claim of discrimination and alleged that an employee in Motel 6's corporate office told her that if Robert pursued his claim, she would be discharged. Her charge does not mention race, sex, or national origin discrimination in any capacity.

Accordingly, Juanita's district court allegations that she was terminated because of her race are not reasonably related to her charge of retaliation. Her retaliation charge is based on her relationship to Robert and his actions, while her claim for race discrimination rests on allegations that she was discharged solely based on her race or national origin. As a result, Juanita failed to exhaust her administrative remedies, and the district court correctly granted summary judgment on her racial discrimination claim.

*Third-party retaliation*

An action for retaliatory discharge is founded on the proposition that because an employee filed a complaint for some type of discrimination against the employer, she was discharged.[11] Juanita's retaliation claim is actually a "third-party" retaliation claim be-

---

[9]*Shah v. Mt. Zion Hospital & Medical Ctr.,* 642 F.2d 268, 271 (9th Cir. 1981) (involving a claim filed with the EEOC alleging sex and national origin discrimination, where the employee attempted to expand his action at trial to include claims of race, color, and religious discrimination) (quoting *Oubichon v. North American Rockwell Corporation,* 482 F.2d 569, 571 (9th Cir. 1973)); *see also Sitar v. Indiana Dept. of Transp.,* 344 F.3d 720 (7th Cir. 2003) (holding that sex discrimination and sex harassment claims were not reasonably related to an EEOC retaliation charge).

[10]*See Harper v. Godfrey Co.,* 45 F.3d 143, 148 (7th Cir. 1995).

[11]*See* NRS 613.340(1).

cause she alleged that Motel 6 retaliated against her due to Robert's activities, rather than her own.[12] We have not previously decided whether Nevada's anti-retaliation statute, NRS 613.340, supports a retaliation claim when the complaining party has not engaged in protected activity.

NRS 613.340(1) states:

> It is an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by NRS 613.310 to 613.435, inclusive, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under NRS 613.310 to 613.435, inclusive.

Similarly, Title VII makes it unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."[13]

Federal appellate courts have concluded that Title VII's plain language precludes a third-party retaliation claim because of the pronoun "he," which applies only to parties personally engaged in protected activity.[14] Additionally, in *Smith v. Riceland Foods, Inc.,*[15] the Eighth Circuit Court of Appeals opined that third-party retaliation claims are not necessary to protect spouses or significant others because Title VII also prohibits employers from retaliating against employees for " 'assist[ing] or participat[ing] in any manner' in a proceeding under Title VII."[16] The *Riceland* court reasoned that in most situations, a third party will fall within Title VII's protection because she will have participated in some manner in the Title VII proceeding.[17] The *Riceland* court also acknowledged that following anything other than Title VII's plain meaning would create problems in deciding who qualifies for protection under the statute.[18]

---

[12]*See Fogleman v. Mercy Hosp., Inc.,* 283 F.3d 561 (3d Cir. 2002).

[13]42 U.S.C. § 2000e-3(a) (2000).

[14]*See Fogleman,* 283 F.3d at 568; *Smith v. Riceland Foods, Inc.,* 151 F.3d 813, 819 (8th Cir. 1998); *Holt v. JTM Industries, Inc.,* 89 F.3d 1224 (5th Cir. 1996); *see also Horizon Holdings v. Genmar Holdings,* 241 F. Supp. 2d 1123 (D. Kan. 2002).

[15]151 F.3d 813 (8th Cir. 1998).

[16]*Id.* at 819.

[17]*Id.*

[18]*Id.* (citing *Holt,* 89 F.3d 1224 (concluding that deviating from the plain language of the Age Discrimination in Employment Act would create line-

Unlike the federal appellate courts, some federal district courts have held that third-party retaliation claims are actionable even when the party did not explicitly engage in protected activity.[19] These courts have based their conclusion on the primary purpose of Title VII's anti-retaliation provision—"to ensure unfettered access to statutory remedial mechanisms"—and have necessarily ignored the statute's plain language.[20] This policy approach was soundly rejected by the Third Circuit Court of Appeals in *Fogleman v. Mercy Hospital, Inc.*[21] Although the *Fogleman* court recognized the conflict between Title VII's plain meaning and its general policy objectives, the court concluded that the statute had to be read according to its plain meaning. To do otherwise would implicate the separation of powers:

> The preference for plain meaning is based on the constitutional separation of powers—Congress makes the law and the judiciary interprets it. In doing so we generally assume that the best evidence of Congress's intent is what it says in the texts of the statutes.[22]

Although we recognize that, as with Title VII, a conflict exists between NRS 613.340(1)'s plain language and the statute's policy objectives, we are bound to follow a statute's plain meaning when the language is unambiguous.[23] NRS 613.340(1), like Title VII, limits the initiation of a retaliatory discrimination action to those individuals that have opposed an unlawful employment practice or participated in any manner in a proceeding brought under NRS 613.310 to 613.435. To ignore the plain meaning of NRS 613.340(1) would be an impermissible judicial excursion into the legislature's domain. Therefore, to sustain a retaliation action under NRS 613.340(1), the party bringing the action must have personally engaged in activity protected by NRS 613.340(1).

Here, the record does not demonstrate that Juanita participated in Robert's NERC claim, nor does it reveal any instance of Juanita

---

drawing problems)); *see Fogleman,* 283 F.3d at 567 (noting that a court's interpretation of Age Discrimination in Employment Act is relevant to interpreting Title VII).

[19]*See, e.g., Gonzalez v. New York Dept. of Correct. Ser.,* 122 F. Supp. 2d 335, 346-47 (N.D.N.Y. 2000); *E.E.O.C. v. Nalbandian Sales, Inc.,* 36 F. Supp. 2d 1206 (E.D. Cal. 1998); *De Medina v. Reinhardt,* 444 F. Supp. 573 (D.D.C. 1978).

[20]*Nalbandian Sales,* 36 F. Supp. 2d at 1210.

[21]283 F.3d 561.

[22]*Id.* at 569.

[23]*State, Bus. & Indus. v. Granite Constr.,* 118 Nev. 83, 87, 40 P.3d 423, 426 (2002).

opposing Motel 6's employment practices. Accordingly, Juanita did not engage in activity protected by NRS 613.340(1), and the district court properly granted summary judgment to Motel 6 on Juanita's third-party retaliation claim.

*Defamation*

A defamation claim requires demonstrating (1) a false and defamatory statement of fact by the defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages.[24] Certain classes of defamatory statements are, however, considered defamatory per se and actionable without proof of damages.[25] A false statement involving the imputation of a crime has historically been designated as defamatory per se.[26]

Juanita's defamation claims centered on her allegations that Inman communicated to the police and a Motel 6 area manager that Juanita and Robert had stolen several items from the motel and that Juanita and Robert had written threatening letters to Inman. The district court concluded that Inman's statements to the police were absolutely privileged and that Inman's statements to the area manager were privileged as intracorporate communications and not actionable.

*Inman's statements to police*

We have not previously decided if defamatory statements made to police before the initiation of criminal proceedings are absolutely privileged or enjoy only a qualified privilege. On several occasions, we have recognized an absolute privilege for communications published in the course of judicial proceedings, even when the statements are false or malicious and are republished with the intent to harm another.[27] We have also extended an absolute privilege to quasi-judicial proceedings, such as when a citizen filed a complaint with an internal affairs bureau against a police officer.[28] Nevertheless, we have never directly decided what type of privilege applies to communications with a police officer before criminal proceedings are commenced.

---

[24]*Simpson v. Mars, Inc.,* 113 Nev. 188, 190, 929 P.2d 966, 967 (1997).

[25]*K-Mart Corporation v. Washington,* 109 Nev. 1180, 1194, 866 P.2d 274, 282 (1993).

[26]*Id.*

[27]*See, e.g., Sahara Gaming v. Culinary Workers,* 115 Nev. 212, 984 P.2d 164 (1999); *Circus Circus Hotels v. Witherspoon,* 99 Nev. 56, 657 P.2d 101 (1983); *Knox v. Dick,* 99 Nev. 514, 665 P.2d 267 (1983).

[28]*Lewis v. Benson,* 101 Nev. 300, 701 P.2d 751 (1985).

We previously addressed the issue in *K-Mart Corporation v. Washington*,[29] but failed to clearly determine whether a qualified or absolute privilege applies. In that case, the plaintiff claimed that K-Mart defamed him by falsely telling the police that he had stolen hair products. We concluded that K-Mart's statements were subject to a qualified privilege granted to merchants under former NRS 598.030, which applied when a person was reasonably believed to have stolen the store's merchandise. Alternatively, we opined that "[t]he statements could be deemed communications preliminary to a judicial proceeding under Restatement (Second) of Torts [section] 587 and therefore would be absolutely privileged if made in good faith."[30] Accordingly, by employing a statutory qualified privilege but suggesting that an absolute privilege might apply, *K-Mart* failed to answer whether a qualified or absolute privilege operates in such instances.

Most jurisdictions that have considered this issue have concluded that communications made to police before the initiation of criminal proceedings enjoy only a qualified privilege.[31] In so concluding, these courts have balanced an individual's right to enjoy a reputation unimpaired by defamatory attacks against the public interest of free and full disclosure of facts to the judicial, legislative, and executive departments of government.[32] Additionally, courts adopting a qualified privilege have noted the distinction between statements made in court and statements made to the police. As recognized by the Oregon Supreme Court in *DeLong v. Yu Enterprises, Inc.*,[33] in court, individuals must be free to "risk impugning the reputations of others, in order to discharge public duties and protect individual rights," but citizens making informal complaints to police "should not enjoy blanket immunity from an action; instead, such statements should receive protection only if they were made in good faith, to discourage an abuse of the privilege."

---

[29]109 Nev. 1180, 866 P.2d 274 (1993).

[30]*Id.* at 1191, 866 P.2d at 282. In *Sahara Gaming*, 115 Nev. at 216-17, 984 P.2d at 166, we concluded that an absolute privilege applies regardless of the lack of good faith.

[31]*Fridovich v. Fridovich*, 598 So. 2d 65, 67 (Fla. 1992) (collecting cases); *see also Newark Trust Company v. Bruwer*, 141 A.2d 615, 617 (Del. 1958); *Indiana Nat. Bank v. Chapman*, 482 N.E.2d 474, 479 (Ind. Ct. App. 1985); *Cormier v. Blake*, 198 So. 2d 139, 144 (La. Ct. App. 1967); *Packard v. Central Maine Power Co.*, 477 A.2d 264, 268 (Me. 1984); *Caldor v. Bowden*, 625 A.2d 959, 968-69 (Md. 1993); *DeLong v. Yu Enterprises, Inc.*, 47 P.3d 8, 12 (Or. 2002). *But see Starnes v. International Harvester Co.*, 539 N.E.2d 1372, 1374-75 (Ill. App. Ct. 1989), *abrogated on other grounds by Bryson v. News America Publications, Inc.*, 672 N.E.2d 1207 (Ill. 1996).

[32]*Fridovich*, 598 So. 2d at 68.

[33]47 P.3d at 11-12.

Although a few jurisdictions have considered communications with police in aid of law enforcement as an initial step in judicial proceedings and have therefore applied an absolute privilege,[34] we agree with those courts that have adopted a qualified privilege. The competing policies of safeguarding reputations and full disclosure are best served by a qualified privilege. To the extent that we suggested in *K-Mart* that statements made to police before the initiation of criminal proceedings could be deemed "communications preliminary to a judicial proceeding" under the Restatement (Second) of Torts, section 587, we recede from that premise.

Additionally, as other courts have recognized, a qualified privilege provides adequate protection against frivolous lawsuits. Under a qualified privilege, the plaintiff must prove by a preponderance of the evidence that the defendant abused the privilege by publishing the defamatory communication with actual malice.[35] Actual malice is a stringent standard that is proven by demonstrating that "a statement is published with knowledge that it was false or with reckless disregard for its veracity."[36]

Having concluded that a qualified privilege applies in this instance, we examine whether Juanita produced any evidence that Inman's statements to the police were made with actual malice. Juanita, in her opposition to Motel 6's summary judgment motion, supplied an affidavit, which implies that Inman's statements to the police were untrue but does not state that the statements were made with the knowledge that they were false.

In addition, the only evidence in the record of the alleged defamatory statement is a letter from the police acknowledging that Inman lodged a complaint with them. The letter, however, simply indicates that Inman informed the police that she suspected that Juanita and Robert, and a third unrelated party, might be responsible for the "problems" at Motel 6. At most, the letter and affidavit demonstrate that Inman indicated to the police her suspicion that Juanita and Robert may have been responsible for the Motel 6

---

[34]*See Starnes,* 539 N.E.2d at 1374-75; *Hott v. Yarbrough,* 245 S.W. 676 (Tex. Comm'n App. 1922) (holding that letters written to a grand jury foreman and a county attorney, charging a violation of the criminal law and asking that the matter be brought up before the grand jury, are absolutely privileged).

[35]*See Circus Circus Hotels v. Witherspoon,* 99 Nev. 56, 62, 657 P.2d 101, 105 (1983); *Bank of America Nevada v. Bourdeau,* 115 Nev. 263, 982 P.2d 474 (1999); *Fridovich,* 598 So. 2d at 69 (holding that the plaintiff must establish that "the defamatory statements were false and uttered with common law express malice").

[36]*Pegasus v. Reno Newspapers, Inc.,* 118 Nev. 706, 722, 57 P.3d 82, 92 (2002).

theft and the threatening letters. Suspicions of criminal wrongdoing are commonly expressed to police, and often the suspicion is misplaced. Without more, the mere fact that an individual informs police of possible criminal wrongdoing does not establish malice. To overcome the qualified privilege, Juanita was required to establish that Inman acted with reckless disregard for veracity or with knowledge of falsity.[37] She failed to do so.

As a qualified privilege applies to Inman's statements to the police and Juanita failed to advance any evidence of malice, we conclude that the district court properly granted summary judgment to Motel 6 on this issue.

### Inman's statement to upper management

As for Inman's statements to upper management, it appears that the district court improperly relied on our decision in *M & R Investment Co. v. Mandarino*[38] for the proposition that intracorporate communications cannot constitute publication. In *M & R,* we held that a statement between two employees of a casino was not a "publication" for the purposes of a defamation action.[39]

In *Simpson v. Mars Inc.,*[40] however, we revisited the issue of intracorporate communications and concluded that while certain intracorporate communications are privileged, any privileges are defenses and not part of the prima facie case.[41] As a result, defendant corporations bear the burden of alleging and proving the privilege's existence.[42] We noted in *Simpson* that "[t]he circumstances of the communication of the allegedly defamatory material are uniquely within the knowledge of the corporation and its agents."[43] Because an intracorporate communication is only privileged if the communication occurs in the regular course of the corporation's business, we held that it would be unfair to place the burden on the plaintiff to plead and prove facts "which are peculiarly within the knowledge of the corporate defendant, such as the circumstances of intracorporate communications."[44]

---

[37]*Id.* at 722, 57 P.3d at 92-93.

[38]103 Nev. 711, 748 P.2d 488 (1987).

[39]*Id.* at 716, 748 P.2d at 491.

[40]113 Nev. 188, 929 P.2d 966 (1997).

[41]*Id.* at 191-92, 929 P.2d at 968. We note that *M & R* relied on our decision in *Jones v. Golden Spike Corp.,* 97 Nev. 24, 623 P.2d 970 (1981), which we explicitly overruled in *Simpson.*

[42]*Simpson,* 113 Nev. at 192, 929 P.2d at 968.

[43]*Id.* at 191, 929 P.2d at 968.

[44]*Id.* at 192, 929 P.2d at 968.

Accordingly, under *Simpson,* Motel 6 had the burden of alleging and proving the existence of the privilege. Because Juanita alleged that Inman made defamatory statements to upper management and supported her allegations with a third-party affidavit, which acknowledged that the allegedly defamatory statement was made, Motel 6 had the burden of demonstrating that the statement was privileged. Motel 6 neglected to do so, and thus summary judgment was erroneous. Accordingly, we reverse on this narrow issue.

### Motel 6's response

Motel 6 urges this court to affirm the district court's order on the alternative ground that Juanita failed to produce any evidence of damages from the alleged defamatory statements. Motel 6 acknowledges that the imputation of a crime may constitute defamation per se. Nevertheless, Motel 6 argues that defamation per se only gives rise to a rebuttable presumption of damages. Motel 6 did not raise this issue in the district court, and arguments raised for the first time on appeal need not be considered on appeal.[45] Accordingly, we decline to consider the issue at this time.

### CONCLUSION

For the reasons stated in this opinion, we affirm the district court's order in part, but we reverse that portion of the district court's order granting summary judgment on Juanita's claim for defamation based on intracorporate communications. We remand this case for further proceedings consistent with this opinion.[46]

ROSE and GIBBONS, JJ., concur.

---

[45]*Dermody v. City of Reno,* 113 Nev. 207, 211, 931 P.2d 1354, 1357 (1997).

[46]Having reviewed the record, we conclude that the district court properly granted summary judgment to Motel 6 on Juanita's claims for failure to promote and intentional infliction of emotional distress.