MEMORANDUM *
Karen Gerving (“Gerving”), a stepmother of three young children, appeals from the district court’s grant of summary judgment in favor of her former employer, Opbiz, LLC, doing business as Aladdin Resort and Casino (“Aladdin”), on her claims of gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a), and Nevada state law.[1] We reverse and vacate the grant of summary judgment on Gerving’s claims of gender discrimination and retaliation, and remand for further proceedings.[2]
We review an order granting summary judgment de novo. Diaz v. Eagle Produce Ltd. Partnership, 521 F.3d 1201, 1207 (9th Cir.2008). The McDonnell Douglas framework governs our analysis of both discrimination and retaliation claims in the summary judgment context. See McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1122, 1124 (9th Cir.2004) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).
To survive summary judgment on a claim of gender discrimination, the plaintiff must first make a minimal showing that: (1) she belongs to a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and, (4) her employer treated her differently than a similarly situated employee who does not belong to the same protected class. Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1028 (9th Cir.2006) (citing McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817). Gerving made the required showing by pointing to evidence that her supervisor, Jim Lauster (“Lauster”), began to give her poor performance reviews after she became a stepmother and told her that working mothers could not perform as well as men or women without children, that mothers should stay at home, and that she would have to choose between being a mother and a sales manager. Gerving also presented evidence that Lauster made similar discriminatory remarks to another employee, Kadija Tejan, during her pregnancy and subsequently declined to consider her for a promotion. Further, Gerving pointed to evidence that she was reprimanded for telephone calls to her children and time away from work, while a male coworker with children was not. Although there was some evidence that Gerving was not performing satisfactorily, other evidence showed positive customer feedback. Making all reasonable inferences in favor of Gerving, as is required on summary judgment, a jury could conclude that her poor reviews were motivated, at least in part, by Lauster’s discriminatory animus.
Gerving also presented a prima fa-cie case of retaliation. There was evidence that Gerving complained directly to Stacey *695 Briand in Human Resources about Laus-ter’s comments. The record showed that Lauster became angry when Gerving’s complaints were brought up during a meeting with Human Resources, attempted to fire her less than two weeks later, and was only prevented from doing so because a “firing freeze” was in effect during a change in management. Any delay between Gerving’s complaints and her actual termination is explained by the firing freeze, as Gerving was fired just months after the management transition was complete. See Porter v. Cal. Dep’t of Corr., 419 F.3d 885, 895 (9th Cir.2005).
Once the plaintiff establishes a pri-ma facie case for discrimination or retaliation, the employer must articulate a legitimate, nondiscriminatory reason for its employment decision. If the employer meets that burden, the plaintiff must then present evidence creating a triable issue of fact that the employer’s proffered reasons were pretextual. See Cornwell, 439 F.3d at 1031, 1035.
Although Aladdin cited customer complaints about Gerving, her poor performance, and her profanity-laced argument with a coworker as nondiscriminatory reasons for her termination, Gerving presented the following evidence that those reasons were pretextual: (1) her performance reviews were satisfactory until she became a stepmother, (2) Lauster tried to fire her shortly after her complaints to Human Resources and was prevented from doing so only by a firing freeze, (3) Lauster told Gerving there would be “zero tolerance” under the new management, (4) Lauster began discussing Gerving’s termination with the new management prior to the events that were ultimately cited as the bases for her termination, (5) the customer complaints cited as reasons for her termination were not uncommon and were used by customers to leverage discounts on disputed fees, (6) the customers who complained about Gerving had such fee disputes, and (7) profanity was common in the workplace and not grounds for termination. See Cornwell, 439 F.3d at 1031-34.
From this specific evidence, a reasonable jury might conclude that Gerving was terminated in retaliation for complaining about Lauster’s discriminatory comments, and that her termination was motivated by discriminatory animus. Accordingly, the order granting summary judgment on Gerving’s gender discrimination and retaliation claims is VACATED, and this case is REMANDED for further proceedings.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

. Because Nevada's anti-discrimination and retaliation laws are almost identical to Title VII, the analysis is the same for both. See Apeceche v. White Pine County, 96 Nev. 723, 615 P.2d 975, 977 (1980); Pope v. Motel 6, 121 Nev. 307, 114 P.3d 277, 281-82 (2005).

. Because the parties are familiar with the facts of the case, we repeat them here only as necessary.