**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
**Plaintiff,**

v.

**NALBANDIAN SALES, INC., Defendant.**

**No. CIV–F98–5047 OWW DLB.**

United States District Court,
E.D. California.

April 20, 1998.

---

Francisco Cancino, U.S. Equal Employment Opportunity Commission, San Francisco, CA, for plaintiff.

Robert J. Noriega, Noriega & Alexander, Bakersfield, CA, for defendant.

## MEMORANDUM OPINION RE: DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(6)

WANGER, District Judge.

### I. INTRODUCTION

Plaintiff Equal Employment Opportunity Commission ("EEOC") commenced this lawsuit against Defendant Nalbandian Sales, Inc., alleging Defendant impermissibly "retaliated" against a former employee (the charging party) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a).

Defendant moves to dismiss the Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposes the pending motion. For the reasons set forth in this opinion, Defendant's motion to dismiss the complaint is DENIED.

### II. FACTUAL BACKGROUND

Mr. Roger Benavidez, the charging party, had been employed by Defendant since 1983

ostensibly on a "seasonal" basis. His last position with Defendant was as a forklift driver. In January of 1995 Mr. Benavidez's sister, Maria Benavidez Pierce, a former employee of Defendant, filed a charge of discrimination against Defendant with the California State Department of Fair Employment and Housing ("DFEH") and the EEOC.

Mr. Benavidez solicited a position with the Defendant for the 1995 season, but was not "hired" or "rehired." Plaintiff alleges that Defendant unlawfully retaliated against Mr. Benavidez "and other similarly situated persons because of their association with or relationship" to Ms. Benavidez Pierce, who had formally complained about Defendant's unlawful employment practices. Pl.'s Complaint at ¶ 7; *see also* Declaration of F. Cancino in Supp. of Pl.'s Opp. to Def.'s Mot. to Dismiss, at Ex. B (In his pre-complaint questionnaire, Mr. Benavidez stated that Chris Aaron, a Nalbandian supervisor, told him that "Jon [Waters] said, [Mr. Benavidez] 'cannot be hired back because his family member has a lawsuit against me.' "). The complaint alleges that Mr. Benavidez and other "similarly situated employees have been deprived of equal employment opportunities because of their association and/or relationship to a person who engaged in protected activity" within the meaning of Title VII. *Id.* at ¶ 8.

Mr. Benavidez filed a charge and precomplaint questionnaire against Defendant with the DFEH and the EEOC alleging a third-party retaliation claim. The EEOC issued a "Letter of Determination of Reasonable Cause" dated September 9, 1997, wherein the EEOC stated that "there is reasonable cause to believe that [Defendant] violated Title VII of the Civil Rights Act of 1964, as amended, by retaliating against [Mr. Benavidez] and members of his family for the protected activity taken by his sister." Declaration of F. Cancino in Supp. of Pl.'s Opp. to Def.'s Mot. to Dismiss, at Ex. C. The EEOC then filed this suit on January 13, 1998 on behalf of Mr. Benavidez and "other similarly situated persons."

### III. Legal Standard

A motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) is disfavored and rarely granted: "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In deciding a motion to dismiss, the court "must accept as true all material allegations in the complaint and construe them in the light most favorable to" the plaintiff. *NL Indus. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986). Conclusions of law, however, are not presumed true. *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981).

The court need not accept as true allegations that contradict facts which may be judicially noticed. *Mullis v. United States Bankruptcy Ct.,* 828 F.2d 1385, 1388 (9th Cir.1987), *cert. denied,* 486 U.S. 1040, 108 S.Ct. 2031, 100 L.Ed.2d 616 (1988). For example, matters of public record may be considered, including pleadings, orders, and other papers filed with the court or records of administrative bodies, *Mack v. South Bay Beer Distributors,* 798 F.2d 1279, 1282 (9th Cir.1986), conclusory allegations, unreasonable inferences, or unwarranted deductions of fact need not be accepted, *Western Mining Council,* 643 F.2d at 624, and allegations in the complaint may be disregarded if contradicted by facts established by exhibits attached to the complaint, *Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir.), *cert. denied,* 484 U.S. 944, 108 S.Ct. 330, 98 L.Ed.2d 358 (1987).

### IV. ANALYSIS AND DISCUSSION

Defendant argues that Plaintiff's complaint fails to state a claim upon which relief can be granted because the EEOC lacks standing to sue [1] given the retaliatory claim asserted and the complaint does not allege "causation" as

---

1. The EEOC may initiate actions in federal district court to enforce the rights of persons employed by private-sector employers. 42 U.S.C. § 2000e–5(f)(1) ("Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge.").

prescribed by 42 U.S.C. § 2000e–3(a). The dispositive issue is whether the anti-retaliation provision of Title VII provides a cause of action for retaliation against an employee arising out of the protected activity engaged in by the employee's friend or relative. A statutory analysis is required. The Defendant suggests the Ninth Circuit has not decided the issue whether a third-party retaliation claim is cognizable under Title VII.

### A. Plain Meaning of the Statutory Language

Section 2000e–3(a) provides:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a).

By its plain terms, § 2000e–3(a) recognizes two types of retaliation: an employer who discriminates against an employee or job applicant because the individual has (1) opposed an unlawful employment practice (the "opposition" clause) or (2) has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing concerning alleged unlawful employment practices (the "participation clause"). Id.; see also Mandia v. ARCO Chemical Co., 618 F.Supp. 1248, 1249 (W.D.Pa.1985).

Here, it is undisputed that Mr. Benavidez did not engage in any "protected activity" within the meaning of Title VII. Rather, the EEOC alleges that Defendant impermissibly retaliated against Mr. Benavidez because his sister filed a discrimination charge against Defendant. A rigid, literal reading of § 2000e–3(a) would not encompass Plaintiff's claim because the statute contains no express language "extending the anti-retaliation pro-

tection to persons merely associated with or related to a person who engaged in protected activity." Defendant thus argues that Plaintiff has failed to state an actionable claim under § 2000e–3(a).

Defendant believes the plain terms of the statute should govern Plaintiff's claims because the disputed statutory language is unambiguous. Given the purported clarity of the statutory language, Defendant contends it is unnecessary and inappropriate to consider additional information and factors in ascertaining Congressional intent underlying the statute at issue. Defendant errs in asserting the statutory language is unambiguous.

### B. Is Section 2000e–3(a) Ambiguous?

The first step in statutory interpretation is to determine whether the disputed language is plain and unambiguous with regard to the particular issue in dispute. Robinson v. Shell Oil Co., 519 U.S. 337, 340–42, 117 S.Ct. 843, 846, 136 L.Ed.2d 808 (1997). The court's inquiry ceases "if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" Id. (quoting United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 240, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989)). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Id. (emphasis added) (citing Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 477, 112 S.Ct. 2589, 2594–2595, 120 L.Ed.2d 379 (1992); McCarthy v. Bronson, 500 U.S. 136, 139, 111 S.Ct. 1737, 1740, 114 L.Ed.2d 194 (1991)).

In concluding the statutory language is unambiguous, Defendant narrowly construes the literal terms of the statute in contravention of accepted standards of statutory construction. Defendant's analysis altogether ignores the textual context of the statutory language and the broad remedial policies underpinning Title VII. See Shell Oil Co., 117 S.Ct. at 846; Holt v. JTM Indus., Inc., 89 F.3d 1224, 1231 (Dennis, C.J., dissenting) ("It is a well-established canon of statutory construction that a court should go beyond the

literal language of a statute if reliance on that language would defeat the plain purpose of the statute.").

The overarching aims of Title VII and the textual context of § 2000e–3(a) strongly counsel in favor of broadly construing § 2000e–(3) to include third-party reprisal claims. *Moyo v. Gomez,* 40 F.3d 982, 985 (9th Cir.1994) (it is well established that Title VII is remedial legislation which must be construed broadly) (citing *Davis v. Valley Distributing Co.,* 522 F.2d 827 (9th Cir.), *cert. denied,* 429 U.S. 1090, 97 S.Ct. 1099, 51 L.Ed.2d 535 (1977) ("The Equal Employment Opportunity Act is a remedial statute to be liberally construed in favor of victims of discrimination.")).

### C. *Third–Party Retaliation Claims Are Actionable Under Title VII*

■ The primary purpose of Title VII's anti-retaliation provision is to ensure unfettered access to statutory remedial mechanisms. *Shell Oil Co.,* 117 S.Ct. at 848; *see also Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1313 (6th Cir.1989) (The purpose of the prohibition against retaliation under Title VII is to "protect access to machinery available to seek redress for civil rights violations."). A construction that requires standing only where the employee himself has participated in activity giving rise to unlawful retaliation would leave all the other retaliated against employees without a remedy. The employer would be free to engage in indirect retaliatory conduct, accomplishing indirectly what it is prohibited from doing directly. Such an interpretation would chill employees from exercising their Title VII rights against unlawful employment practices out of fear that their protected activity could adversely jeopardize the employment status of a friend or relative. *See Clark v. R.J. Reynolds Tobacco Co.,* Civil Action No. 79–7, 1982 WL 2277, at *7 (E.D.La. Feb.2, 1982) ("Plaintiff's son would certainly be deterred from exercising his rights under Title VII if there was a threat

that his former employer could fire his father if he were to file a charge of discrimination against it. This is exactly the type of retaliation Congress meant to make unlawful by 42 U.S.C. § 2000e–3 . . . ."); *cf. Equal Employment Opportunity Commission v. Ohio Edison Co.,* 7 F.3d 541, 545 (6th Cir.1993). This would in turn frustrate the EEOC's efforts to ferret out and investigate impermissible employment practices. It seems unlikely that Congress intended the broad remedial purposes of the statute to be thwarted in such a way.

These legitimate concerns were underscored in *De Medina v. Reinhardt,* 444 F.Supp. 573 (D.D.C.1978):

> While the language of [section 704 of the Civil Rights Act] indicates that Congress did not expressly consider the possibility of third-party reprisals, i.e., discrimination against one person because of a friend's or relative's protected activities the very clear intent of Congress would be undermined by the construction defendant suggests. In enacting § 2000e–3, *Congress unmistakably intended to ensure that no person would be deterred from exercising his rights under Title VII by the threat of discriminatory retaliation.* Since tolerance of third-party reprisals would, no less than the tolerance of direct reprisals, deter persons from exercising their protected rights under Title VII, the Court must conclude . . . that § 2000e–3 proscribes the alleged retaliation of which plaintiff complains.

*Id.* at 580 (emphasis added). In validating "third-party reprisal" claims, the *DeMedina* court implicitly acknowledged the ambiguity of section 2000e–3.

Circuit courts and district courts alike have adopted *DeMedina's* line of reasoning in sanctioning third-party reprisal claims.[2] *See Holt,* 89 F.3d at 1228–34 (Dennis, C.J., dissenting) (collecting cases); *Murphy v. Cadillac Rubber & Plastics, Inc.,* 946 F.Supp. 1108, 1117–18 (W.D.N.Y.1996)

---

2. While these cases may in certain instances be factually distinguishable from this case, they all unequivocally stand for the proposition that an alleged retaliation based on the protected activity of a friend or relative is violative of § 2000e–3. *See Equal Employment Opportunity Commission*

*v. Ohio Edison Co.,* 7 F.3d 541, 543 (6th Cir. 1993) (adopting *DeMedina's* holding and concluding that "plaintiff's allegation of reprisal for a relative's anti-discrimination activities" states an actionable Title VII claim).

(same); *see also Wu v. Thomas,* 863 F.2d 1543, 1547–48 (11th Cir.1989) (permitting husband's claim of retaliation against him for wife's EEOC filing to "piggy back" on wife's charge of retaliation).

In finding third-party retaliation claims are actionable under Title VII, this court exercises authority to broadly interpret federal remedial legislation in order to effectuate the statute's overarching purposes. The majority of courts, including the Supreme Court, "have been willing to construe Title VII and companion provisions under the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3), and the Age Discrimination Employment Act (ADEA), 29 U.S.C. § 623(d), broadly in order not to frustrate the purpose of these Acts, which is to prevent fear of economic retaliation from inducing employees 'quietly to accept [unlawful] conditions.'" *Ohio Edison Co.,* 7 F.3d at 544 (quoting *Mitchell v. Robert DeMario Jewelry, Inc.,* 361 U.S. 288, 292, 80 S.Ct. 332, 335, 4 L.Ed.2d 323 (1960); *see also International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 381, 97 S.Ct. 1843, 1878, 52 L.Ed.2d 396 (1977) (Marshall, J., concurring in part and dissenting in part) (Title VII is a remedial statute designed to eradicate certain invidious employment practices and "under longstanding principles of statutory construction, it should 'be given a liberal interpretation ... (and) exemptions from its sweep should be narrowed and limited to effect the remedy intended.'") (citation omitted)).

It is well established that courts broadly interpret and apply section 2000e–3 so as "to zealously protect the rights of employees under Title VII." *Held v. Missouri Pacific R.R. Co.,* 373 F.Supp. 996, 1004 (S.D.Tex.1974); *Jones v. Flagship Int'l,* 793 F.2d 714, 725 (5th Cir.1986) (recognizing that the provisions of Title VII "must be construed broadly in order to give effect to Congress' intent in eliminating invidious employment practices," and that "since the enforcement of Title VII rights necessarily depends on the ability of individuals to present their grievances without the threat of retaliatory conduct by their employers, rigid enforcement of [Title VII's anti-retaliation provision] is required."), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987). "Moreover, since Title VII is remedial, its purpose of eliminating discriminatory employment practices ought not to be frustrated by strict construction ..." *Tidwell v. American Oil Co.,* 332 F.Supp. 424, 428 (D.Utah 1971); *cf. Culpepper v. Reynolds Metals Co.,* 421 F.2d 888, 891 (5th Cir.1970) ("It is, therefore, the duty of the courts to make sure that the [Title VII] works, and the intent of Congress is not [to be] hampered by a combination of a strict construction of the statute and a battle with semantics.").

In *Passer v. American Chemical Society,* for example, the D.C. Circuit stated that a former employee could maintain an action under the ADEA's anti-retaliation provision even though a literal reading of the statute barred retaliation "only against 'employees or applicants for employment.'" 935 F.2d 322, 330 (D.C.Cir.1991). The court reasoned a former employee was entitled to relief under the anti-retaliation provision because "[t]o read the statute otherwise would be to deny protection to any person who has suffered discharge or termination due to unlawful discrimination." *Id.* at 331. The court stated that "Congress could not have intended such an absurd result." *Id.; see also Sauers v. Salt Lake County,* 1 F.3d 1122, 1128 (10th Cir.1993) (action taken against an individual in anticipation that the person would engage in protected opposition to discrimination constitutes retaliatory discharge in violation of 42 U.S.C. § 2000e–3(a)); *NLRB v. Retail Store Employees Union, Local 876,* 570 F.2d 586, 590 (6th Cir.), *cert. denied,* 439 U.S. 819, 99 S.Ct. 81, 58 L.Ed.2d 109 (1978) (anti-retaliation provision of the National Labor Relations Act prohibited an employer from firing an employee who refused to testify at a Board hearing despite the fact that the statute, by its terms, applied only to employees who had "filed charges or given testimony," and did not address a refusal to give testimony).

### D. *EEOC Historically Has Recognized Third–Party Retaliation Claims*

The EEOC has had a long-standing policy recognizing and enforcing third-party retaliation claims asserted under Title VII. *Bates v. Widnall,* Appeal No. 01963655, 1997 WL 332902, at *1 (E.E.O.C. June 10, 1997) (charging party stated a third-party reprisal

claim by alleging that she was subjected to an inquiry concerning the manner in which she performed her duties because of her son's filing of a discrimination complaint); EEOC Decision No. 72–1267, 1972 WL 4006, at *2–*3 (E.E.O.C. Mar. 6, 1972) (Personnel action taken against an individual because of another person's opposition to an unlawful employment practice constitutes a violation of section 704(a). To hold otherwise, "would stifle such opposition to unlawful employment practices and ... be inconsistent with the intent of Section 704(a).").

In an early administrative decision under the Act, the Commission held that "discrimination against an employee because he or she has a familial relationship with a person who has filed a charge of discrimination is violative of Section 704(a) of Title VII." Equal Employment Opportunity Commission Decision No. 77–34, 1977 WL 5345, at *1 (E.E.O.C. Aug. 16, 1977). In so holding, the Commission reasoned:

> The language does manifest a Congressional intent to extend coverage over a broad base of activities. *This broad based protection should not be undermined by allowing the [employer] to accomplish indirectly what it cannot accomplish directly.* The statute forbids an employer from retaliating against an individual because he or she has filed a charge. *Certainly, where it can be shown that an employer discriminated against an individual because he or she was related to a person who filed a charge, it is clear that the employer's intent is to retaliate against the person who filed the charge.*

*Id.* (emphasis added) (citing *EEOC v. Union Bank of Arizona,* 1976 WL 1727, 11 E.P.D. ¶ 10,764 (D.Ariz.1976)).

The EEOC, as the administrative agency authorized by statute to implement and enforce Title VII, has construed the remedial purposes of section 2000e–3(a) and the construction is entitled to deference. *See Holt,* 89 F.3d at 1233–34; *see also EEOC v. Arabian American Oil Co.,* 499 U.S. 244, 257, 111 S.Ct. 1227, 1235, 113 L.Ed.2d 274 (1991) (Because the EEOC is not authorized to promulgate rules and regulations implementing Title VII, "the level of deference afforded [its interpretations of this Act] will depend on the thoroughness evident in its consider-

ation, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.") (quoting *General Electric Co. v. Gilbert,* 429 U.S. 125, 141–42, 97 S.Ct. 401, 411, 50 L.Ed.2d 343 (1976)).

Recognizing third-party retaliation claims effectuates the underlying purpose of Title VII's anti-retaliation provision and the statute's broad remedial purposes. To hold otherwise, would thwart congressional intent and produce an absurd result.

### 1. *Causation*

■ In order to plead an actionable third-party reprisal claim pursuant to § 2000e–3(a), Plaintiff must allege: (1) that a relative or friend was engaged in statutorily protected expression; (2) resulting adverse employment action; and (3) a causal link between the protected expression and the adverse action. *Thurman v. Robertshaw Control Co.,* 869 F.Supp. 934, 941 (N.D.Ga.1994) (citing *Mandia v. ARCO Chemical Co.,* 618 F.Supp. 1248, 1250 (W.D.Pa.1985)).

■ Here, the EEOC alleges that Mr. Benavidez's sister engaged in statutorily protected activities when she filed a charge of discrimination against Defendant in January of 1995. The EEOC further alleges that Mr. Benavidez was not hired or rehired during the 1995 season as a result of the protected activities taken by his sister. These allegations state a *prima facie* third-party reprisal claim: protected activity by a close relative, resulting adverse employment action and a time frame indicating a causal connection between the two. Causation has been sufficiently alleged.

### 2. *Passive, Inactive Employee Has Standing To Assert A Third–Party Retaliation Claim*

Defendant also argues that Mr. Benavidez has no standing to sue because the statute does not recognize a retaliation claim absent an allegation the charging party opposed an unlawful employment practice or participated in a Title VII proceeding.

Defendant's standing argument is grounded on the Fifth Circuit's holding in *Holt v. JTM Industries, Inc.,* 89 F.3d 1224 (5th Cir.

1996). In that case, the plaintiff was placed on paid administrative leave after his wife filed an age discrimination claim following the termination of her employment. *Id.* at 1225. The plaintiff sued the employer for retaliation under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623(d).[3] *Id.* Section 623(d) protects employees from retaliation for opposing acts of discrimination, or for charging, testifying, assisting, or participating in any manner in an investigation, proceeding, or litigation under the ADEA. 29 U.S.C. § 623(d).

The plaintiff argued that "automatic standing" is conferred upon a showing that plaintiff's spouse engaged in protected activity. *Holt,* 89 F.3d at 1226. The court recognized the possibility that an employer may retaliate against an employee because of the protected activity taken by the employee's friend or relative, *id.* at 1227, but did not accept standing premised on status alone, without an allegation of causal connection. A floodgates-of-unfounded-lawsuits justification was applied. *Id.* at 1227 ("If we hold that spouses have automatic standing to sue their employees for retaliation, the question then becomes, which other persons should have automatic standing to guard against the risk of retaliation."). The court held that § 623(d) did not automatically confer *standing* upon complainants' spouses who are merely "passive observers" to protected activity. *See id.* at 1225–27.[4]

*Holt's* reasoning has been questioned: "The majority's reading of the provision flouts the clear purpose of the ADEA's prohibition of retaliatory conduct to ensure that claimants are secure to pursue their claims of discrimination." *Id.* at 1231. The *Holt* dissent stated the pivotal issue in *Holt* (like the case here) did not concern standing, rather it was a recognition of the absence of a causal link with the spouse's adverse employment action, *i.e.,* retaliation for a spouse's protected activity must be shown.

■ The requirement that a party establish standing stems from the Article III re-

quirement of a "case or controversy." U.S. CONST. Art. III, § 2, cl. 1. A party has standing when it "has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy." *Sierra Club v. Morton,* 405 U.S. 727, 732, 92 S.Ct. 1361, 1364, 31 L.Ed.2d 636 (1972). "The Supreme Court has formulated a three-part test to determine whether the plaintiff has standing for purposes of Article III, requiring the plaintiff to allege (1) an actual or threatened injury that is (2) traceable to the conduct of the defendant and (3) is likely to be redressed by a favorable judicial decision." *Id.* at 1228 (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)).

■ Mr. Benavidez has satisfied the minimum constitutional standards of standing in that he has alleged he was injured as a result of defendant's retaliatory conduct and compensatory damages and injunctive relief would redress his claims. *See Holt,* 89 F.3d at 1229 (Dennis, C.J., dissenting) (reasoning plaintiff had standing to assert third-party reprisal claim under ADEA's anti-retaliation provision); *see also Nicol v. Imagematrix,* 773 F.Supp. 802, 806 n. 6 (E.D.Va.1991) (third parties do have standing to sue under Title VII if they allege retaliatory discrimination).

Defendant argues that "passive plaintiffs not involved in even the slightest form of protected activity" will reap a "windfall" were the court to sanction third-party retaliation claims. Contrary to Defendant's apocalyptic concerns, Plaintiff is a long way from a final judgment. That Plaintiff can state a claim does not establish the EEOC can prove the elements of its case. *See, e.g., Hudson v. Southern Ductile Casting Corp.,* 849 F.2d 1372, 1376 (11th Cir.1988) (defendant's motion for summary judgment granted because the evidence did not demonstrate that father was discharged because of son's Title VII protected activity); *Summitville Tile, Inc.,* 245 N.L.R.B. No. 111 (1979) (evidence did not support finding that employer discharged entire night shift because of another worker's

---

**3.** "The anti-retaliation provisions of the ADEA and Title VII are similar and cases interpreting the latter provision are frequently relied upon in interpreting the former." *Holt,* 89 F.3d at 1226 n. 1.

**4.** The *Holt* court recognized that an individual has standing to sue under section 623(d) if they participated "in any manner" with their friend's or relative's protected activity. *Id.* at 1227.

participation in a Board hearing); *Liberty Sportswear Co.*, 183 N.L.R.B. No. 127 (1970) (simply because employee was related to individuals who testified at Board meeting is insufficient without more to assert a retaliation claim).

A final point Defendant raised in oral argument is unavailing; *i.e.*, that agricultural employees are different due to the transitory nature of their work and that agricultural employers would be unduly burdened by having to obey the laws against unlawful employment practices. Agricultural employers are not different from other employers for purposes of compliance with Title VII. A large and frequent turnover of employees does not provide justification for exception from Title VII requirements.

### V. CONCLUSION

For the reasons discussed herein, Defendant's motion to dismiss is DENIED.

Counsel for Plaintiff shall prepare an order in conformity with this memorandum opinion and lodge it with the court within five (5) days following the date of service of this opinion.

IT IS SO ORDERED.