**Gregory FOGLEMAN, Plaintiff,**

v.

**MERCY HOSPITAL, INC., Defendant.**

**No. 4:CV–98–1746.**

United States District Court,
M.D. Pennsylvania.

March 29, 2000.

Donald C. Oschal, Elizabeth C. Leo, Rosenn, Jenkins & Greenwald, Wilkes Barre, PA, for plaintiff.

Joseph A. O'Brien, Oliver Price & Rhodes, Scranton, PA, for defendant.

## *MEMORANDUM*

McCLURE, District Judge.

### *BACKGROUND:*

On October 26, 1998, plaintiff Gregory Fogleman commenced this action by filing a complaint alleging that his employment was terminated in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 et seq., the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 et seq., the Pennsylvania Human Relations Act (PHRA), 43 Pa.Stat.Ann. §§ 951 et seq., and the Pennsylvania Wage Payment and Collection Act (PWPCA), 43 Pa.Stat.Ann. §§ 260.1 et seq. Counts I, II, and III of the complaint allege that the termination was in retaliation for a claim by Fogleman's father under the PHRA, ADA, and ADEA, respectively. Count IV is a claim under the PWPCA alleging that Mercy withheld wages and other compensation due at the time of the termination.

After an attempt at mediation between the parties failed, discovery was completed. Jury selection is scheduled for June 1, 2000, with trial to commence as soon as feasible thereafter.

Before the court is Mercy's motion for summary judgment.

## DISCUSSION:

### I. STANDARD

#### A. Summary Judgment

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*" Fed. R.Civ.P. 56(c) (emphasis added).

... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323–324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex* at 323, 106 S.Ct. 2548. He or she can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex* at 325, 106 S.Ct. 2548.

Issues of fact are genuine "only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph,* 842 F.2d 689, 693–694 (3d Cir.1988) (citing *Anderson v.* *Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Material facts are those which will affect the outcome of the trial under governing law. *Anderson* at 248, 106 S.Ct. 2505. The court may not weigh the evidence or make credibility determinations. *Boyle v. County of Allegheny,* 139 F.3d 386, 393 (3d Cir.1998). In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Boyle* at 393; *White v. Westinghouse Electric Co.,* 862 F.2d 56, 59 (3d Cir.1988).

If the moving party satisfies its burden of establishing a prima facie case for summary judgment, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. *Boyle* at 393 (quoting, *inter alia, Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

#### B. Retaliation

In its brief in support of the motion for summary judgment, Mercy confines its argument to the claims of retaliation. Those claims are limited to Counts I, II, and III of the complaint, while Count IV relates to compensation allegedly not provided to Fogleman after the termination of his employment. Because no argument is made with respect to Count IV, we confine our consideration to the retaliation claims.

Because of the similarity in language, claims of retaliation under the ADEA, ADA, and PHRA follow the framework established for cases under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e–1 et seq. *Krouse v. American Sterilizer Co.,* 126 F.3d 494, 500 (3d Cir.1997) (anti-retaliation provision of ADA similar to anti-retaliation provision of Title VII); *Barber v. CSX Distribution Services,* 68 F.3d 694, 698 (3d Cir.1995) (provisions of ADEA similar in "text, tone, and purpose" of Title VII). *See also Dici*

*v. Commonwealth of Pennsylvania,* 91 F.3d 542, 552 (3d Cir.1996) (PHRA applied in accordance with Title VII unless language of PHRA demonstrates otherwise). To establish a claim under any one of these provisions, the plaintiff must demonstrate that: (1) he or she engaged in protected activity under the relevant act; (2) there was an adverse employment action either after or contemporaneous with the protected activity; and (3) there is a causal connection between the protected activity and the adverse employment action. *Krouse* at 500; *Barber* at 701; *Woodson v. Scott Paper Co.,* 109 F.3d 913, 920 (3d Cir.) (PHRA claim analyzed under Title VII framework), *cert. denied,* 522 U.S. 914, 118 S.Ct. 299, 139 L.Ed.2d 230 (1997).

Mercy's first, and strongest, argument is that Fogleman lacks standing to pursue his retaliation claims because he did not engage in a protected activity under any of the asserted statutory provisions. Rather, he brings the claims as the son of another Mercy employee who asserted rights under the relevant acts. We agree that the claims do not survive summary judgment.

## II. STATEMENT OF FACTS NOT IN GENUINE DISPUTE

The parties recite a litany of facts which have little or nothing to do with the motion for summary judgment.[1] We will attempt to summarize the facts as necessary for disposition of the motion.

Mercy operates the Mercy Hospital in Wilkes–Barre, Luzerne County, Pennsylvania. Fogleman began employment with Mercy Hospital in January, 1978, as a security officer. He was named Supervisor of Security at Mercy Hospital in 1992.

Fogleman's father, Sterril Fogleman, was employed at Mercy Hospital from January, 1976, through November 29, 1993. In 1994, Sterril Fogleman complained to the Equal Employment Opportunity Commission of discrimination under the ADEA and ADA. He also pursued a complaint before the Pennsylvania Human Relations Commission, and on June 30, 1995, commenced a civil action in this court which was docketed to No. 3:CV–95–0957 (assigned to Vanaskie, J., now Chief Judge). The civil action was dismissed as settled in July, 1998.

Fogleman was not a party to his father's actions before the EEOC, the PHRC, or this court, nor was he a witness or otherwise a participant. When asked by a Mercy official if he knew anything about his father's case, Fogleman indicated that he did not, and stated that he would not discuss it even if he did.

On September 6, 1996, there was an incident involving Fogleman and Audrey Oeller, an employee at the Mercy Hospital Gift Shop. Oeller was in the shop before it opened when the door was unlocked by Fogleman. The circumstances of Fogleman's entry are in dispute, but it is clear that he generally did not have authority to be in the shop. The reason he gave for being there and his actions while in the shop were inconsistent with the statement given by Oeller.

Purportedly based on the inconsistencies, as well as the failure to report the incident, Fogleman's employment was terminated. He claims that the real reason was Sterril Fogleman's claims against Mercy and that the incident in the gift shop is a pretext for retaliation by Mercy.

1. In addition to the unnecessarily lengthy statements of fact, the court was presented with an unnecessarily (and improperly) lengthy brief. Plaintiff moved to file a brief in excess of the limit under our Local Rules, and leave to file a brief up to 30 pages in length was granted. Apparently, 30 pages was not sufficient, since the brief is printed in a proportional font (Times New Roman) of 11 points, which is less than both the limit under our Local Rules, LR 5.1(c) (permitting proportional fonts of no less than 14 points) and the standard word processor default of 12 points. We think that thirty pages was sufficient for these purposes.

## III. RETALIATION FOR "PROTECTED ACTIVITY"

The provisions barring retaliation in each of the asserted acts read as follows:

No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a)(ADA).

It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

29 U.S.C. § 623(d) (ADEA).

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or in the case of a fraternal corporation or association, unless based upon membership in such association or corporation, or except where based upon applicable security regulations established by the United States or the Commonwealth of Pennsylvania:

. . .

(d) For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assist-ed, in any manner, in any investigation, proceeding or hearing under this act.

43 Pa.Stat.Ann. § 955(d) (PHRA).

By their terms, each act prohibits retaliation against the person who actually opposes an unlawful discriminatory practice, referring to "such individual," and to no other person.

This is the reading of the ADEA given by the Fifth Circuit in *Holt v. JTM Industries, Inc.*, 89 F.3d 1224 (5th Cir.), *reh'g en banc denied,* 105 F.3d 658 (5th Cir.1996) (table), *cert. denied,* 520 U.S. 1229, 117 S.Ct. 1821, 137 L.Ed.2d 1029 (1997). In that case, a husband and wife were employees of the defendant when the wife's employment was terminated. She pursued a claim of age discrimination under the ADEA before the EEOC and the Texas Commission on Human Rights. About two weeks after the employer received notice of the administrative complaint, it placed the husband on administrative leave and later offered him a job in another part of the country. He quit after several weeks. *Id.* at 1225

The Fifth Circuit examined § 623(d) and pointed out that a third party may sue for retaliation under that provision if the third person engages in the enumerated conduct even if the conduct is on behalf of another employee's claim of discrimination. *Id.* at 1226. The problem in *Holt* was that the third party (the husband) had not participated in any way in enumerated conduct, either for himself or on behalf of the wife.

The Fifth Circuit discussed *De Medina v. Reinhardt,* 444 F.Supp. 573 (D.D.C. 1978), in which a wife sued for retaliation based on her husband's anti-discrimination activities. The Fifth Circuit pointed out that the opinion did not specify whether the wife had participated in her husband's activities. To the extent it could be read as stating as much, the Fifth Circuit simply disagreed. *Holt* at 1226.

The rationale of *Holt* is straightforward: The ADEA retaliation provision does not

say that a third party may assert a claim for retaliation when that third party does not engage in protected activity. The protection from retaliation is limited by plain language to those persons who engage in protected activity, which is consistent with Congress' intent "to enable employees to engage in protected activities without fear of economic reprisal." *Id.* at 1226–1227. The problem with a rule allowing third-party standing is that the type of relationship which would confer such standing is undefined. Further, in most instances, the types of people who would be covered by an automatic standing rule will have participated in protected activity on the employee's behalf, so that such a rule would add little to the scheme actually enacted by Congress. *Id.* at 1227.

To the rationale of the Fifth Circuit, we would add one more point: In most cases in which the spouse of a complainant suffers retaliation, it may be that the *complainant* might have standing to pursue the claim of retaliation, since the complainant would suffer financially from such action as well.

One other Court of Appeals has considered the question of automatic third-party standing under the civil rights statutes and has agreed with the Fifth Circuit:

> We believe that the rule advocated by Thomas—that a plaintiff bringing a retaliation claim need not have personally engaged in statutorily protected activity if his or her spouse or significant other, who works for the same employer, has done so—is neither supported by the plain language of Title VII nor necessary to protect third parties, such as spouses or significant others, from retaliation. *See* [*Holt*]. Title VII already offers broad protection to such individuals by prohibiting employees from retaliating against employees for "assist[ing] or participat[ing] in any manner" in a proceeding under Title VII. Accordingly, we hold that a plaintiff bringing a retaliation claim under Title VII must estab-

lish that she personally engaged in the protected conduct.

*Smith v. Riceland Foods, Inc.,* 151 F.3d 813, 819 (8th Cir.1998) (brackets in original).

Fogleman concedes that the Third Circuit has not ruled on the issue of automatic third-party standing, but points to two district court opinions from within the Third Circuit which he contends represent the "overwhelming majority of cases" and support his position. Actually, both cases are distinguishable.

In *Aquino v. Sommer Maid Creamery, Inc.,* 657 F.Supp. 208 (E.D.Pa.1987), plaintiffs were a husband and wife bringing claims under, *inter alia,* Title VII. The husband participated in a conciliation meeting before the Pennsylvania Human Relations Commission, and the district court held that this was protected activity for purposes of a retaliation claim under Title VII. *Id.* at 210. Thus, standing was not automatic but based on the husband's own conduct in participating in the proceedings.

More difficult is the opinion in *Mandia v. ARCO Chemical Co.,* 618 F.Supp. 1248 (W.D.Pa.1985), in which the plaintiffs were again a husband and wife. The opinion is somewhat confusing because of the manner in which the court summarized its analysis at the opening of the discussion. It stated:

> With respect to the *participation* element, the evidence is clear that [the husband] participated, supported and aided his wife in the filing of the EEOC charge on November 3, 1982 with relation to sexual harassment. It is solely by reason of his wife's charge that he could be considered to have made any allegation of sexual harassment against his employer, and thus be engaged in a protected activity. We will concentrate on the evidence surrounding the claim that his discharge from employment arose out of the filing by his wife of a complaint under Title VII against her employer, the same employer as her

husband's, the defendant here. This is retaliation against a third-party because of the filing of a Title VII complaint by a close relative. We conclude that Section 2000e–3 proscribes such retaliation. *See De Medina v. Reinhardt,* 444 F.Supp. 573 (D.D.C.1978) and *Kornbluh v. Stearns and Foster Co.,* 73 F.R.D. 307 (N.D.Ohio 1976).

*Mandia* at 1250 (emphasis in original; bracketed material added).

In other words, the court states that the husband engaged in a protected activity, then states that the claim is one of retaliation based solely on his wife's Title VII complaint. Because the husband's own activity was protected, there would be no reason for an automatic standing rule to be applied.

Moreover, the analysis in which the *Mandia* court engaged confuses the matter further. The court pointed out that, while both the husband and the wife had made complaints about her treatment, those complaints had not included claims of sexual harassment. *Id.* at 1251–1252. Also, when the wife finally made a complaint of sexual harassment to the EEOC, the decision already had been made to fire the husband, and a determination not to reconsider the termination was made before the decision-maker learned of the complaint. *Id.* at 1252–1253. Above all of this, at the time that the decision to fire the husband was made, the decision-maker did not even know that the couple was married. *Id.* at 1253.

Given all of these facts, we are unable to see how the husband could possibly maintain a cause of action. It simply is impossible for an employer to retaliate with respect to a claim about which it is unaware, and it cannot retaliate by terminating a spouse's employment when it does not know that there *is* a spouse. In other words, the court found that (1) the husband was engaged in a protected activity but (2) he could not establish a causal connection between that activity (or his wife's activity) and the adverse employ-

ment decision. *See esp.* 618 F.Supp. at 1253 (finding of causal relation between discharge and wife's charge of sexual harassment "would be pure speculation"). An automatic standing rule is unrelated to this analysis.

Stated differently, the husband alleged that he engaged in protected activity on behalf of his wife, and he therefore had standing to pursue a claim of retaliation. The claim fails substantively because (1) the court found as a fact that the husband did not engage in protected activity because the timely complaints were not allegations of sexual harassment and (2) the employer was not aware of any claim of sexual harassment or that the couple were married before the decision to terminate the husband's employment had been made. Thus, despite a lengthy analysis related to standing, the claim of retaliation actually failed on the merits.

We therefore conclude that neither *Mandia* nor *Aquino* stands for the proposition for which they are cited. To the extent they are read as supporting the automatic standing rule, we disagree for the reasons stated herein and in *Holt.*

Fogleman also cites a "Guidance" issued by the EEOC on May 20, 1998, to support the proposition that he has automatic standing to pursue his claim of retaliation. *EEOC: Guidance on Investigating, Analyzing Retaliation Claims,* Fair Employment Practices Rep. (BNA) No. 849, at 405:7581 (1998) (hereinafter cited as "Guidance"). As with *Mandia* and *Aquino,* the Guidance does not survive closer scrutiny, a conclusion we reach after traveling a rather circuitous route.

The Guidance provides in part:

Title VII, the ADEA, the EPA [Equal Pay Act], and the ADA prohibit retaliation against someone so closely related to or associated with the person exercising his or her statutory rights that it would discourage that person from pursuing those rights. For example, it is unlawful to retaliate against an employ-

ee because his son, who is also an employee, opposed allegedly unlawful employment practices. Retaliation against a close relative of an individual who opposed discrimination can be challenged by both the individual who engaged in protected activity and the relative, where both are employees. See Section 8–II C.3. for discussion of similar principle under "participation" clause.

. . .

The retaliation provisions of Title VII, the ADEA, the EPA, and the ADA prohibit retaliation against someone so closely related to or associated with the person exercising his or her statutory rights that it would discourage or prevent the person from pursuing those rights. For example, it would be unlawful for a respondent to retaliate against an employee because his or her spouse, who is also an employee, filed an EEOC charge. Both spouses, in such circumstances, could bring retaliation claims.

Guidance at § 8–II.B.3.c., 8–II.C.3. (Fair. Employment Practices Rep. at 405:7586, 7587) (footnotes omitted).

In the first quoted paragraph, the omitted footnote cites *Murphy v. Cadillac Rubber & Plastics, Inc.*, 946 F.Supp. 1108, 1118 (W.D.N.Y.1996), for the proposition that the plaintiff may state a valid claim of retaliation based on his or her spouse's protected activities. Fair Employment Practice Rep. at 405:7586 n. 23. Once again, the opinion states that the husband also participated in the protected activity. *See id.* at 1117 (husband alleged that "he assisted and supported his wife in her request to leave her quality control position and return to her former union production job, and that he assisted and supported her in her complaints of discrimination . . ."). Thus, the *Murphy* opinion suffers from the same shortcoming as *Mandia. See esp. Murphy* at 1118 (citing *Mandia* ).

In the second paragraph quoted above, an omitted footnote reads:

*See, e.g., EEOC v. Ohio Edison Co.*, 7 F.3d 541, 544 (6th Cir.1993) (agreeing that plaintiff's allegation of reprisal for relative's protected activities states claim under Title VII); *Thurman v. Robertshaw Control Co.*, 869 F.Supp. 934, 941 (N.D.Ga.1994) (plaintiff could make out first element of *prima facie* case of retaliation by showing that plaintiff's close relative participated in the complaint process).

The Commission disagrees with the Fifth Circuit's holding in [*Holt* ] that there was no unlawful retaliation where the plaintiff was put on paid administrative leave because his wife had filed an age discrimination charge.

Fair Employment Practices Rep. at 405:7587 n. 27 (parallel citations omitted).

While the Sixth Circuit in *Ohio Edison* purported to be relying on *De Medina* and its progeny, in the end its holding differed from those cases. Rather than concluding that a complainant's relative has automatic standing to sue for retaliation under Title VII, it held that a plaintiff may bring an action for retaliation based on the protected activity of a person acting on the plaintiff's behalf. *See* 7 F.3d at 545–546 (Title VII anti-retaliation provision "should be broadly construed to include a claim in which an employee, *or his representative,* has opposed any practice may an unlawful employment practice"; emphasis in original). In fact, the person who engaged in the protected activity was an unrelated coworker, not a relative. *Id.* at 542.

For its part, the court in *Thurman* simply cited *Mandia* and *Ohio Edison* without analysis. 869 F.Supp. at 941, 941 n. 3.

A number of the cases reaching the conclusion that a plaintiff may bring an action for retaliation rely on the reasoning set forth in cases discussing the problem of a former employee suing. That is, a plaintiff may have been an employee of the defendant at one time, then suffer a termination of that employment for a prohibited reason. In such a case, a literal reading of

the civil rights statutes would preclude a civil action because only an employee or applicant for employment may sue. However, the courts have consistently held that a former employee may bring an action under such circumstances. *See generally Ohio Edison* at 544–545 (collecting cases).

There is a major difference in the principles of interpretation applicable in those cases, however. Title VII makes it unlawful, *inter alia*, for an employer to discharge an employee because of the employee's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1). A person aggrieved by such an unlawful employment practice may bring a civil action after exhausting available administrative remedies. 42 U.S.C. § 2000e–5(f). There is thus a tension between the definition of employee as a "person employed by an employer," 42 U.S.C. § 2000e(f), and the provisions allowing an employee to bring an action: the employee is not an employee (having been discharged) at the time of the filing of the claim or complaint. Given this tension, which may be termed an ambiguity, the term "employee" is subject to interpretation or construction, and inclusion of former employees within its definition is consistent with the purpose of Title VII. Indeed, inclusion of former employees within the meaning of "employee" is the only way that the rights of a discharged employee can be protected and the goal of Title VII fulfilled under these circumstances.

In contrast, Fogleman points to no similar tension or ambiguity within the anti-retaliation provisions of the ADA, ADEA, or PHRA, nor does any court which authored any of the opinions cited by Fogleman, and we are able to discern none. It is therefore improper to interpret the statutes in any way other than by their plain language.

■■■ We return, then, to the Guidance and the view of Title VII, the ADEA, the EPA, and the ADA offered by the EEOC. Generally, in the absence of a direct ex-pression of congressional intent, a court must defer to an agency's interpretation of its governing statute. *Sandoval v. Reno,* 166 F.3d 225, 229 (3d Cir.1999) (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). Congressional intent on the precise question at issue is ascertained by employing traditional tools of statutory construction. *Sandoval* at 240 (citing *Chevron* at 843 n. 9, 104 S.Ct. 2778).

Each of the anti-retaliation provisions quoted above states that an employer may not retaliate against a person who opposes an unlawful discriminatory practice or a person who participates in proceedings related to a charge of unlawful discrimination. The statutes are clear in referring to retaliation against *"such person,"* meaning the person who actually opposed the practice or participated in the proceedings. In plain, unmistakable English, Congress has limited claims of retaliation to adverse acts taken against "such person[s]." The Guidance by the EEOC therefore is contrary to the statutes at issue, and we will not defer to the EEOC's view of the statutes.

## IV. ALTERNATIVE ARGUMENTS

As an alternative, Fogleman contends that he engaged in protected activity by telling his superior that he did not know anything about his father's suit. We fail to see how refraining from engaging in protected activity can be considered to be protected activity, and no statutory language supports this argument.

Fogleman also contends that he has a cause of action because Mercy perceived of him as engaging in a protected activity. Once again, no statutory language indicates that a person perceived in this manner is to be considered as engaged in a protected activity for purposes of the anti-retaliation provisions. *Cf.* 42 U.S.C. § 12102(2)(C) (under ADA, "disability" includes being regarded as having an impairment).

### V. CONCLUSION

As stated by the Fifth Circuit in *Holt*, and as reiterated by the Eighth Circuit in *Smith*, the plain language of the civil rights statutes' anti-retaliation provisions is to the effect that only a person who actually engages in protected activity may bring an action for retaliation. There is no ambiguity in the language employed, and there is no tension between the anti-retaliation provisions and the remainder of the acts. The plain language therefore governs.

Fogleman may not maintain an action alleging retaliation based on his father's prior suit, standing alone. He must allege and prove that he engaged in protected activity, and he has not done so.

The motion for summary judgment will be granted with respect to Counts I, II, and III. An order consistent with this memorandum will issue.